## YOUNGSTOWN ICE CO v LEWIS

Ohio Appeals, 7th Dist. Mahoning Co

Decided March 18, 1932

Harrington, DeFord, Huxley & Smith, Youngstown, for plaintiff in error.

Wm. E. Pfau, Youngstown, for defendant in error.

ployed in a clerical position in one of the banks of the city of Youngstown, perhaps the First National, in which she operated a machine necessary in keeping bank accounts. After this accident and her necessary absence for some few days, it is admitted that her wages were paid by the bank for that period. The trial court instructed the jury as follows:

"She would be entitled further to be compensated for any loss of earnings that have directly and naturally resulted, as shown by the evidence, from the injuries so received as claimed by her, due to the negligence on the part of the defendant, and she would be entitled to recover compensation for loss of earning power naturally resulting, if any is shown with reasonable certainty from the evidence, or will result in the future as a direct and proximate result of the injuries received by her due to the negligence as claimed by her of the defendant."

It is claimed in this connection that inasmuch as the petition does not declare for special damages upon the ground of loss of earnings, that this was an improper instruction. It is true that the trial court said "as shown by the evidence." However, it is contended that there was no testimony disclosed in this case which shows any loss of earnings, and that is true. There is another statement in this charge, "and she would be entitled to recover compensation for loss of earning power." It is necessary to differentiate between the "loss of earnings" and the "loss of earning power." There is certainly a decided difference between the two. "Loss of earnings" would be the pecuniary loss sustained by reason of the accident. "Loss of earning power" might apply to much more than the position occupied at the time by the person; for instance, it is asserted in this case that Mary Lewis afterwards had some difficulty with her arm, so that certain movements could not be made and that it interfered with the operation of the machine which she operated in the bank. It might also apply to other positions which subsequently she might assume to hold and perform the duties thereof.

**FARR, J.**

It is insisted in the first instance that there was error in the charge of the trial court, and it may be observed in passing that the petition declares upon some five different grounds of negligence. It is well understood, in this jurisdiction that loss of earnings are known as special damages, and that in order to recover for the same there must be an allegation in the petition, or the issue must be raised by testimony in the progress of the trial, and which is admitted without objection. There was no declaration for special damages on the ground of loss of earnings. The pleader is to be commended in this behalf, because it is disclosed that at that time, or at least immediately after the accident, there was no loss of earnings. Mary Lewis was em-

For a case sustaining the view of the plaintiff in error, the case of **Henry Wright v Youngstown Municipal Railway Company**, (9 Abs 553; 9 Abs 359), is cited, a case decided by this court. Henry Wright was injured and a damage claim was filed in his behalf against the party whom he

charged with negligence, and an instruction very similar was given to that in the instant case. However, the controlling factor in deciding the issue in the Henry Wright case was that there was no proof whatsoever of the amount of the loss of earnings which he sustained by reason of the injury. He gathered up wood over the city of Youngstown, and there was no testimony going to show the value of his services in gathering up the wood, so there is somewhat of a difference in the two cases, save and except that the general principle is applicable to both cases, as above stated, and that is unless there is a declaration for special damages because loss of earnings or unless the issue is raised in the proof, that it is an incorrect instruction to the jury, and in the instant case the jury would certainly have in mind that it had been instructed to make such finding for loss of earnings as the evidence might disclose, and there being no testimony to disclose such loss, it follows that the fore part of the instruction was incorrect and constitutes prejudicial error.

It is true that there is an allegation in the petition as follows:

"Plaintiff further avers that as a result of this accident she was required to be absent from her employment for a period of time, and since the accident occurred the injuries which she received have greatly interfered with the performance of her duties, both in the office where she is employed, as well as her household duties."

Again the pleader is to be commended for having alleged the facts as the testimony discloses in this case, but the allegation is not broad enough to include loss of earnings, so that ground of error can not avail in the instant case.

It is worthy of note that many authorities and cases are cited to sustain the contention of the plaintiff in error as above, 17 C. J., 99, and numerous other cases. Some of interest in this jurisdiction is Hanna v Stoll, 112 Oh St, 344; 6 Thompson on Negligence, §7307; Traction Company v Smith, 14 Oh Ap, 389; Taxi. Company v McGrew, 16 Oh Ap, 219, and numerous other cases which are cited and which are upon the point in the instant case.

The next and last assignment for error which was pressed in argument is to the admission of testimony of Dr. Skipp. Dr. Lindsay was the family physician of Mary Lewis and testified at considerable length. Dr. Skipp was called as a medical expert; that is to say, he was called to examine the injured person, and after having done so he testified as to the result of his examination. It is perhaps sufficient to say that Dr. Skipp would have been entitled to testify to any objective symptoms which he found, such as cuts, abraisions, bruises, those things which are discernible upon examination of the body, but not to subjective symptoms; that is, where the person examined makes a complaint that they suffer pain or states that a certain condition has resulted in the way of subjective symptoms, and the rule obtaining in such cases is contended to be for the reason that to permit a medical expert to so testify would be to permit him to state to the jury the complaints made by the injured person, and which would be in the nature of self serving declarations.

The testimony of Dr. Skipp about which complaint is made, is found at pages 98, 99, 100 et seq. On page 100 is found a statement of Dr. Skipp which illustrates the character of the testimony to which objection is made, and which it is contended was not admissible, so far as medical expert evidence is concerned:

"Q. In other words, you can't put a rigidity into muscles by just wanting to?

A. No sir, not a group of muscles; that is, you may put a whole arm in a rigid condition. In this area, the individual complained of pain, the motion in that part of her back, that is, in the right coapular region, just below it or right shoulder blade, wasn't, the expansion in breathing was retarded, that is, it didn't go right in as well as on the left side."

Now, the part complained of was that the doctor was permitted to say that in this area the individual complained of pain. The expert medical examination in this instance says that he made an examination from head to foot. As far as any objective symptoms were concerned, his testimony would be competent, but what say the authorities in this jurisdiction as to this class of testimony, relating to subjective symptoms?

A case of interest is McAndrews v McAndrews, 19 Oh Ap, 262. The syllabus reads as follows:

"A physician called for the purpose of testifying as an expert may neither testify to other than objective symptoms, nor base his testimony partially on objective symptoms and partially on statements made to him by the person being examined."

That case sets out rather clearly the rule obtaining in Ohio. Another case of interest here is Reid v Yellow Cab Co., 67 A.L.R., 1. It sets forth the syllabus of the case and at pages 16, 17 and 18 in elaborate notes the subject under consideration here is discussed, and in these cases it is held that the medical expert may not testify to subjective symptoms, only objective.

Another case is **Pennsylvania Company v Files, 65 Oh St, 493.** The first proposition of the syllabus reads as follows:

"Where one who has received a physical injury from the wrongful act of another, calls upon a physician, not for the purpose of receiving medical aid and treatment, but for the purpose of enabling the physician to testify, as an expert, in a pending or proposed suit, statements made by the party under such circumstances in regard to his condition, are not admissible in evidence; and, for a stronger reason, like statements made to third persons, not physicians, under similar circumstances, are incompetent."

The principle announced in this case has not been changed in Ohio and is authoritative here, but a case of rather more than usual interest is that of L. S. & M. S. Railway Company v Mary E. Yokes, 12 C. C., Old Series, 499. The opinion in this case is by the late Judge Laubie. It is a Mahoning County case and has received favorable comment not only in this but other jurisdictions. The opinion is typical of that excellent lawyer and judge, and covers a number of pages in the volume referred to. The first proposition of the syllabi reads:

"In an action to recover for injuries to the person, claimed to have been received in a railway collision, a physician who had been employed by the plaintiff to examine and treat her, can not be permitted to testify as a witness in her behalf to statements of the plaintiff as to causes of such injuries, or that she attributed her condition to injuries received in such collision."

It is of much interest to read this opinion, which need not be cited at length here, but many cases from many jurisdictions are cited and commented upon by Judge Laubie, and the case is of rather unusual interest in this connection because a Mahoning County case and reported from this district.

It follows, therefore, that while the testimony of Dr. Lindsay, who had been the family physician for twenty or perhaps more years, was competent and took a wider range in some respects than Dr. Skipp, yet he was the family physician and such testimony by the family physician has been recognized as competent, but as to the casual examiner, the expert who is called for cursory examination and to testify as an expert, he may speak only of his examination as it relates to objective symptoms, and having gone far afield in this respect it follows that the testimony was incompetent. Therefore, for the two reasons given, error in the charge and admission of incompetent testimony, the judgment is reversed and cause remanded.

ROBERTS and POLLOCK, JJ, concur.